# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JACK H. GRAHAM, III,        )
                              )
           Plaintiff,       )
                              )
           v.               )        1:22cv708
                              )
STEVE ALBRO,              )
                              )
           Defendant.       )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on Defendant's Motion for Summary Judgment (Docket Entry 13 (the "Motion); see also Docket Entry 14 (the "Supporting Brief")).  For the reasons that follow, the Court should grant the Motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff petitioned this Court, pursuant to 18 U.S.C. § 923(f)(3), to review and overturn Defendant's decision to revoke Plaintiff's federal firearms license ("FFL").  (See Docket Entry 1 at 1.)  According to the Complaint, Plaintiff owns and operates a pawn shop in this District, out of which he has "acquire[d] and s[old] firearms . . . since September 1996."  (Id.)  The Complaint alleges further that Defendant (Director of Industry Operations for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Charlotte Field Division), after issuing Plaintiff a Notice of Revocation and holding a hearing on the matter, revoked Plaintiff's

FFL in July 2022. (See id. at 2.) The Complaint contends this Court should overturn Defendant's decision one two grounds: because (1) "[t]he revocation of P[laintiff]'s license was based in part on acts occurring more than five (5) years prior to the beginning of the enforcement proceeding" (id. at 4), i.e., beyond the relevant statute of limitations (see id. at 3-4), and because (2) "P[laintiff] did not willfully violate [the Gun Control Act ("GCA") and its implementing regulations in that] the alleged failures . . . were inadvertent and[] technical errors which were not done intentionally and purposely" (id. at 4). In lieu of an answer, Defendant filed the Motion. (See Docket Entry 13.)

Along with the Motion, Defendant submitted the administrative record before Defendant when he reached the decision to revoke Plaintiff's FFL. (See Docket Entry 12 at 2.)[1] That record reflects that Plaintiff, at the time of his FFL revocation hearing, had operated his business for 34 years, including for the last 26 years as its sole proprietor. (See Docket Entry 12-1 at 80.)[2] The first ATF compliance inspection of Plaintiff's business disclosed

---

1 The Court may, at this stage, consider the administrative record, as well as any additional evidence the parties submit as part of their summary judgment briefing. See 18 U.S.C. § 923(f)(3).

2 For consistency, pin citations will refer to the page number appended to the footer upon docketing in the CM/ECF system, rather than any internal pagination within the exhibit.

in the record occurred in 2001, at which point Plaintiff "was cited for one violation." (Id. at 103.)

The next compliance inspection of Plaintiff's business took place in September 2006 (see id. at 15); then, Plaintiff received a report of violations detailing that he had (1) failed to timely record the disposition of firearms, and (2) failed to ensure the accuracy and/or completeness of ATF transaction records (referred to as "Form 4473s") (see id. at 120-26 (report of violations from 2014 highlighting certain repeat violations from September 2006)). The ATF conducted a third inspection in November 2008 (see id. at 15); that inspection revealed additional violations for Plaintiff's failure to ensure the accuracy and/or completeness of Form 4473s (see id. at 123 (report of violations from 2014 documenting certain repeat violations from November 2008).)

In March 2014, the ATF carried out its fourth compliance inspection of Plaintiff's business. (See id. at 126.) That inspection resulted in a report of approximately 100 violations, including for (1) failing to timely record the disposition of firearms, (2) failing to ensure the accuracy and/or completeness of Form 4473s, and (3) failing to perform background checks for firearm transfers to North Carolina law enforcement personnel. (See id. at 120-126.) During this inspection, an ATF investigator reviewed with Plaintiff a checklist "of regulations pertaining to the FFL." (Id. at 16; see also id. at 127-28 ("Acknowledgment of

3

Federal Firearms Regulations" bearing Plaintiff's signature on "3/11/2014").) After the inspection, the record reflects that Plaintiff wrote to the ATF, and expressed his intent to thereafter "complete[ Form 4473s] in full before the firearm is allowed to leave the building[,] . . . double check[ Form 4473s] to ensure all information is recorded and transferred correctly" (id. at 130), and establish several other remedial measures to ensure compliance with the GCA (see id.). Plaintiff also "attended a warning conference following [the] 2014 compliance inspection." (Id. at 103.)

The next year, in August 2015, the record shows that the ATF conducted a fifth compliance inspection of Plaintiff's business. (See id. at 134.) The report from that inspection details approximately 15 violations (see id. at 131-34), all of which constituted repeat violations from prior compliance inspections (see id. at 21-23 (testimony from ATF investigator at hearing describing 2015 violations as repeat violations from either 2006, 2008, or 2014)). During this inspection, the ATF investigator again reviewed pertinent regulations with Plaintiff (see id. at 23), and Plaintiff again signed a document expressly acknowledging his "responsib[ility] for familiarizing [him]self with all of the laws and regulations governing [his] licensed firearms business" (id. at 136).

4

The next compliance inspection, which served as the catalyst for the revocation of Plaintiff's FFL, took place in September 2021. (See id. at 103.) The resulting Notice of Revocation catalogs approximately 130 violations that the ATF investigator discovered during the inspection, which include (1) failing to conduct a background check (id.), (2) failing to record a background check transaction number on a Form 4473 (id.), (3) failing to ensure that firearm purchasers correctly completed Form 4473s (id. at 104), (4) failing to report certain sales wherein purchasers obtained multiple firearms (id.), (5) failing to ensure the accuracy and/or completeness of Form 4473s (id.), (6) failing to document background check information on Form 4473s (id. at 105), (7) failing to verify and/or record identification documents on Form 4473s (id.), (8) failing to note the firearm description on Form 4473s (id.), and (9) failing to perform a background check for a firearm transfer to a North Carolina law enforcement officer (id. at 106). Several of these violations constituted repeat violations from previous compliance inspections. (See id. at 104.)

As a result of the September 2021 inspection, the ATF provided Plaintiff, on March 29, 2022, with "notice . . . of the revocation of [Plaintiff's FFL because the ATF] has reason to believe that [Plaintiff] willfully violated the provisions of the [GCA]." (Id. at 103.) The ATF also informed Plaintiff of his right to a hearing on the issue of FFL revocation. (See id. at 109-10.) Plaintiff

thereafter "request[ed] a hearing in review of the revocation, suspension, and/or fine of [his FFL]." (Id. at 114.) The ATF set the hearing for June 16, 2022. (Id. at 115.)

At that hearing, the record documents that the ATF presented evidence, through one of its investigators, of the multiple violations comprising the 2021 compliance inspection report. (See id. at 23-60.) Plaintiff then testified. (See id. at 68-72, 78-99.) In that testimony, Plaintiff addressed the allegation that he failed to conduct a background check for one purchaser by testifying that he did conduct a background check on that occasion, but, while "[he] was on the phone with the FBI . . ., [his] soon-to-be ex came in the business" (id. at 69) and created a disturbance, which caused Plaintiff to forget to record the background check transaction number on the Form 4473 (see id. at 70).[3] As to one other type of violation, Plaintiff testified that, although he at times used outdated and obsolete Form 4473s, he only did so because he ran out of the new version of the form, and shipping delays from the ATF prevented him from maintaining an inventory of current forms. (See id. at 78-80.)[4]

---

3 Notwithstanding this testimony, Defendant still found that "[Plaintiff] willfully violated [the GCA] when [he] failed to conduct a [] background check." (Docket Entry 12-4 at 36.)

4 Having heard this testimony, Defendant concluded that, "[a]lthough . . . [Plaintiff] used obsolete ATF Form 4473[s] in November and Decemeber 2020, [Defendant] d[id] not find that . . . to be willful." (Docket Entry 12-4 at 37.)

6

As for the other violations, Plaintiff did not dispute that they occurred. (See generally id. at 78-98.) Rather, Plaintiff described the violations, which principally consisted of omitting certain information from Form 4473s, as "oversights" (id. at 81), "[]n[o]t intentional" (id. at 87), "for whatever reason, [ ]n[o]t done" (id.), "oversights . . . going through everything [he] was at the time" (id. at 88), and "oversight, human [error], making a mistake" (id. at 92; see also id. at 93 ("[T]here's no[ reason]. It was an oversight.")). Plaintiff also confirmed that he possessed knowledge of his obligations under the GCA and relevant regulations, including how to properly complete Form 4473s. (See id. at 86 ("Q: And so this isn't an instance where you didn't know how to do something -- A: Right."), 86-87 ("Q: So you know - I mean - doing multiple sales [to the same purchaser] is something that you know - you know [what] you're supposed to do. -- A: Yes, sir. -- Q: But in - but for whatever reason, you didn't do that, correct? -- A: Correct."), 87 ("Q: And so, you and your employees should know exactly what is required to be on each of those forms. It's not like that was a new form, correct? -- A: Correct."), 93 ("Q: But you knew [certain information was] supposed to be on there. -- A: Yes, sir.").)

After the hearing, Defendant found that Plaintiff had willfully violated the GCA on approximately 100 occasions. (See Docket Entry 12-4 at 31-37.) Based on those findings, Defendant

7

revoked Plaintiff's FFL. (See id. at 37.) Plaintiff thereafter filed the Complaint (Docket Entry 1), Defendant filed the Motion (Docket Entry 13), Plaintiff filed a Response (Docket Entry 21), and Defendant filed a Reply (Docket Entry 23).

## II. DISCUSSION

### A. Summary Judgment Standards

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the burden of establishing the absence of such dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In analyzing a summary judgment motion, the Court "draw[s] all reasonable inferences in favor of the non-moving party. Emmons v. City of Chesapeake, 982 F.3d 245, 250 (4th Cir. 2020).

### B. The Gun Control Act

The Gun Control Act of 1968 requires that those engaged "in the business of importing, manufacturing, or dealing in firearms, or importing or manufacturing ammunition" obtain a FFL from the Attorney General. 18 U.S.C. § 923(a). "The Attorney General may, after notice and opportunity for hearing, revoke any [FFL] if the

8

holder of such license has willfully violated any provision of th[e GCA] or any rule or regulation prescribed by the Attorney General under th[e GCA]." 18 U.S.C. § 923(e); see also 27 C.F.R. § 478.73(a) ("Whenever the Director has reason to believe that a licensee has willfully violated any provision of the [GCA] or this part, a notice of revocation of the license, ATF Form 4500, may be issued."). Certain relevant provisions of the GCA mandate that firearms dealers conduct background checks, see 18 U.S.C § 922(t), maintain accurate records reflecting firearms transactions, see 18 U.S.C § 922(g)(1)(A), report sales of multiple firearms to individual persons, see 18 U.S.C § 922(g)(3)(A), and comply with applicable state law, 18 U.S.C § 922(b)(2). "A single willful violation authorizes the ATF to revoke the violator's FFL, regardless how severe, though the frequency and severity of the violations can be relevant to willfulness." Fairmont Cash Mgmt., L.L.C. v. James, 858 F.3d 356, 362 (5th Cir. 2017); see also Article II Gun Shop, Inc. v. Gonzales, 441 F.3d 492, 498 (7th Cir. 2006) (noting that "the [GCA] does not allow any de minimis number of [willful] violations").

In the GCA context, "a bad purpose or evil motive is not [necessary to show willfulness]." Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 415 F.3d 1274, 1276 (11th Cir. 2005). The United States Court of Appeals for the Fourth Circuit has instead formulated the standard as entailing

9

"deliberate disregard of, or [] plain indifference toward, either known legal obligations or the general unlawfulness of the actions." RSM, Inc. v. Herbert, 466 F.3d 316, 321–22 (4th Cir. 2006). "[W]hen applying such a formulation of willfulness to an omission . . . a court may infer willful[ness] from a [licensee]'s plain indifference to a legal requirement to act if the [licensee] (1) knew of the requirement or (2) knew generally that his failure to act would be unlawful." Id. at 322.[5]

At the summary judgment stage of a judicial review proceeding under the GCA, the Court takes a somewhat unique approach because, although the Court engages in "de novo judicial review," 18 U.S.C § 923(f)(3), its task consists only of determining whether "the Attorney General was [] authorized . . . to revoke the license," id. In that regard, "this inquiry is different from [] and . . . considerably narrower than . . . the question [of] whether the agency's decision was correct under a court's entirely independent assessment of the record and the pertinent [] law." Morgan v. United States Dep't of Just., Bureau of Alcohol, Tobacco, Firearms & Explosives, 473 F. Supp. 2d 756, 765 (E.D. Mich. 2007) (internal citation and quotation marks omitted), aff'd in part sub nom.,

_____

5 Indeed, even in the criminal context, a willful act does not require "a specific intent to violate the provision at issue." United States v. Collins, 957 F.2d 72, 75 (2d Cir. 1992). Rather, willful conduct involves circumstances in which "the defendant acted with knowledge that his conduct was unlawful." Bryan v. United States, 524 U.S. 184, 192 (1998).

_Morgan v. Federal Bureau of Alcohol, Tobacco & Firearms_, 509 F.3d 273 (6th Cir. 2007).  Thus, although Defendant's decision to revoke Plaintiff's FFL "[i]s not necessarily clothed with any presumption of correctness or other advantage, by confining a court's inquiry to the narrow question of whether the [] decision was 'authorized,'" _Virlow LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives_, No. 1:06-CV-375, 2008 WL 835828, at *2 (W.D. Mich. Mar. 28, 2008), Section 923(f)(3) "does not call upon this Court to decide whether it would revoke the license in it's [sic] own judgment," _Pinion Enters., Inc. v. Ashcroft_, 371 F. Supp. 2d 1311, 1315 (N.D. Ala. 2005).

## C. The Motion

### _Statute of Limitations_

With those standards in mind, the Court should first address the Complaint's contention that Defendant's revocation decision should not stand because it "was based in part on acts occurring more than five (5) years prior to the beginning of the enforcement proceeding."  (Docket Entry 1 at 4.)  According to the Complaint, two relevant statutes of limitations (18 U.S.C. § 3282 and 28 U.S.C. § 2462) provide a limitations period of only five years, and Defendant impermissibly relied on Plaintiff's violations from the 2006, 2008, 2014, and 2015 compliance inspections when issuing its revocation decision after the institution of proceedings in 2021. (_See_ _id._).

11

The Supporting Brief states that, contrary to the foregoing contention, "the revocation [wa]s based solely on violations which occurred in 2021." (Docket Entry 14 at 6.) Further, the Supporting Brief asserts that Defendant "used [Plaintiff]'s violations of the GCA from 2014 and 2015 not as substantive violations, but rather to demonstrate [Plaintiff]'s knowledge of [his] obligations of the GCA to establish willfulness." (Id.) Finally, the Supporting Brief argues that "the cited statute of limitations does not apply to GCA administrative provisions." (Id.)

Plaintiff's Response restates the Complaint's argument that "[t]he revocation . . . was based in part on acts occurring more than five (5) years prior to the beginning of the enforcement proceeding." (Docket Entry 21 at 10.) According to the Response, "[t]hat fact is established by the documents constituting the administrative record, as well as the manner in which the administrative hearing was conducted on the part of [Defendant]." (Id.) The Response adds that "[t]he administrative record of proceedings . . . makes it abundantly clear that [Defendant] did take into account acts of noncompliance which were outside of the five year window provided by 28 U.S.C. § 2462." (Id. at 12.) The Response, however, does not identify any excerpts from the record to support this position, but suggests that the Court "is entitled

12

and obligated to look at the administrative record as a whole."
(Id.)

In analyzing this issue, the Court first should note that the statutes of limitations the Complaint cites do not apply to the administrative proceeding at issue in this case. The initial statute of limitations the Complaint references, 18 U.S.C. § 3282, applies to criminal, not administrative, proceedings. See 18 U.S.C. § 3282(a) (providing that no person shall be **prosecuted, tried, or punished** for any offense, not capital, unless **the indictment** is found or **the information** is instituted within five years" (emphasis added)). The revocation of Plaintiff's FFL did not involve an indictment or information; neither did Defendant prosecute, try, or punish Plaintiff. See Hudson v. United States, 522 U.S. 93, 104 (1997) (describing occupational debarment as "certainly nothing approaching" traditional criminal punishment); Rivera v. Pugh, 194 F.3d 1064, 1068 (9th Cir. 1999) (observing that "license revocation has not been historically regarded as punishment").

In addition, several courts have concluded that 28 U.S.C. § 2462 does not apply to GCA revocation proceedings. See, e.g., Lortz, Ltd. v. Gilbert, 451 F. App'x 503, 504 (6th Cir. 2011) (holding that "denial of a federal firearms license is not an action to enforce a penalty"); Barany v. Van Haelst, 459 F. App'x 587, 588 (9th Cir. 2011) (same); see also Coghlan v. National

13

Transp. Safety Bd., 470 F.3d 1300, 1305-06 (11th Cir. 2006)
(holding that revocation of pilot's airline transport certificate
constitutes remedial action that falls outside the scope of §
2462); United States v. Dhanoa, 402 F. Supp. 3d 296, 300-01 (D.S.C.
2019) (observing consensus view of courts that revocation of
citizenship in denaturalization proceeding does not constitute
penalty within the meaning of § 2462).  Section 2462 attaches to a
government "action, suit or proceeding for the enforcement of any
civil fine, penalty, or forfeiture."  28 U.S.C. § 2462.  Revocation
of a FFL does not entail a fine or forfeiture,[6] and "a penalty, as
the term is used in § 2462, is a form of punishment imposed by the
government . . . which goes beyond remedying the damage caused."
Johnson v. Securities and Exch. Comm'n, 87 F.3d 484, 488 (D.C. Cir.
1996) (internal quotation marks omitted).  As the Eleventh Circuit
concluded in an analogous context:

> From [Plaintiff]'s perspective, the revocation of his
> [license] may well seem to be a punitive sanction.
> However, the findings and rationale of [Defendant]
> indicate that [he] revoked [Plaintiff's license] not to
> punish him for his [violations], but because his
> [violations] called into question his fitness to hold a
> [license] and implicated matters of public [] safety.

Coghlan, 470 F.3d at 1306-07.  Similarly, the Court here should
conclude that neither 18 U.S.C. § 3282 nor 28 U.S.C. § 2462 apply

---

    6 Forfeiture applies to property traceable to or derived from
criminal conduct.  See generally 18 U.S.C. § 981.

to the ATF's administrative proceedings, which involved a remedial sanction rather than a penalty.

Alternatively, the Court could avoid ascertaining the applicability of either statute of limitations, because "whether [or not 28 U.S.C.] § 2462 [or 18 U.S.C. § 3282] applies, [the Court should] conclude that [Plaintiff]'s argument nonetheless lacks merit, because it misunderstands the grounds for which ATF revoked [his] license." RSM, 466 F.3d at 323. In that regard, the administrative record does not support Plaintiff's position that Defendant revoked Plaintiff's FFL for violations occurring in 2006, 2008, 2014, or 2015. For one, the violations included in the Notice of Revocation occurred between September 4, 2020 and May 29, 2021. (See Docket Entry 12-1 at 103-106.) None occurred outside the statutes of limitations Plaintiff cited in his Complaint. (See id.) Then, in the Final Notice of Revocation, Defendant cited those same violations as the basis for his revocation decision. (See Docket Entry 12-4 at 31-34, 36-37.)

Although the Final Notice of Revocation included reference to the "compliance inspections in 2006, 2008, 2014, and 2015" (id. at 35), it did so to establish that "[Plaintiff] knew and understood the [GCA's] requirements" (id. at 34). (See id. at 35 (recounting that Plaintiff "sign[ed] acknowledgments certifying that [relevant laws and regulations] w[ere] explained to [Plaintiff]").) The Fourth Circuit has expressly approved this practice, holding that

"violations, even if supported by evidence of intent that dated from [prior to any relevant statute of limitations], d[o] not accrue until the elements of each violation occurred." RSM, 466 F.3d at 323; see also id. ("While it is true that the hearing officer relied on the long history of violations and warnings extending back to 1997 to find *willfulness*, he based the revocation only on violations that occurred within the five-year period." (emphasis in original)).

Plaintiff contends that the administrative record "makes it abundantly clear that [Defendant] did take into account acts of noncompliance which were outside of the five year window provided by 28 U.S.C. § 2462." (Docket Entry 21 at 12.) But again, this circuit's precedent permits Defendant to consider older violations in order to establish intent for timely violations. See RSM, 466 F.3d at 323. Further, in failing to identify any part of the record that would support the position that the older violations served as the **basis** for the revocation, and simply directing the Court "to look at the administrative record as a whole" (Docket Entry 21 at 12), Plaintiff violates this Court's Local Rules, see M.D.N.C. LR 7.2(a)(2) (instructing parties to support "statement[s] of fact . . . by reference to a part of the official record"); M.D.N.C. LR 56.1(e) (providing that response briefs should set out "specific, authenticated facts existing in the record" to support nonmovant's position).

Although the Court's task involves "de novo judicial review," 18 U.S.C § 923(f)(3), de novo review does not mean that "[a] party should [] expect a court to do the work that it elected not to do," Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014). In short, the record supports Defendant's position, and Plaintiff has failed to identify any portion of the record to support its own. The Court should therefore conclude that Defendant based its revocation decision on Plaintiff's conduct in 2020 and 2021, well within any potentially applicable statute of limitations.

*Willfulness*

The Supporting Brief next describes Plaintiff's violations as willful because he "fully understood his responsibilities as a veteran [licensee] as it relates to the [GCA]." (Docket Entry 14 at 11.) To that point, the Supporting Brief summarizes that, at the 2014 and 2015 compliance inspections, the "ATF conducted a closing conference with [Plaintiff] to discuss violations cited and review GCA regulations." (Id.) Thereafter, in each instance "[Plaintiff] reviewed and signed an Acknowledgement [sic] of the Federal Firearms Regulations." (Id.) As a result, the Supporting Brief argues that Plaintiff willfully violated the GCA, because he "underst[ood] his [] legal obligations . . ., yet fail[ed] to abide by those obligations." (Id. at 12.)

17

Plaintiff's Response contends that, because he did not act intentionally or with a bad purpose, his conduct "was not willful." (Docket Entry 21 at 13.). Rather, the Response describes the violations as "technical and inadvertent" (id. at 16), and more akin to "negligence" (id.), which "necessarily precludes [his] violations as constituting willfulness" (id.). The Response continues by arguing that, "other than the violations themselves, there is no evidence that [Plaintiff] displayed a disregard for the controlling statutes or regulations." (Id.) The Response also asserts that none of Plaintiff's conduct affected public safety. (Id. at 13, 18.) In sum, the Response asserts that Plaintiff mistakenly violated the GCA (approximately 100 times), but did not "purposefully disregard[] or demonstrate[] plain indifference to his obligations under [the] law." (Id. at 17.)

The Court should grant summary judgment to Defendant because Plaintiff, by contending that repeated mistakes cannot constitute willful conduct, has raised an identical argument to that many plaintiffs before him have raised, and one that courts have routinely rejected as a matter of law. In that regard, "it is well established in the context of firearms license revocation, that a history of repeated violations, coupled with adequate knowledge and understanding of the applicable requirements, is sufficient to establish willfulness." Pinion Enters., 371 F. Supp. 2d at 1316. Indeed, "the government often shows willfulness by showing that a

18

licensee repeatedly violated regulations despite knowledge of them and repeated warnings." Barany v. Van Haelst, No. 09-CV-253, 2010 WL 5071053, at *6 (E.D. Wash. Dec. 6, 2010), aff'd, 459 F. App'x 587 (9th Cir. 2011).

As the administrative record in this case reflects, Plaintiff possesses a lengthy history of violations stemming from compliance inspections. The ATF conducted compliance inspections of his business in 2001, 2006, 2008, 2014, and 2015, before the ultimate inspection in 2021 that resulted in revocation of his FFL. (See Docket Entry 12-1 at 15, 21-23, 103, 120-126, 131-134.) During the inspections in 2014 and 2015, an ATF agent reviewed applicable laws and regulations with Plaintiff, and on each occasion Plaintiff signed an acknowledgment expressly recognizing his legal obligations under the GCA. (See id. at 16, 23, 130, 136.) Multiple of Plaintiff's violations arising out of the 2021 compliance inspection constituted repeat violations from previous compliance inspections. (See id. at 104.) Moreover, at the revocation hearing, Plaintiff repeatedly confirmed that he understood his legal obligations. (See id. at 86-87, 93.) Thus, the Court should conclude as the Fourth Circuit once did, that:

> [t]he record is essentially undisputed in this case[; Plaintiff's] long history of repeated failures, warnings, and explanations of the significance of the failures, combined with knowledge of the legal obligations, readily amounts to willfulness as used in 18 U.S.C. § 923(e).

RSM, 466 F.3d at 322. Likewise:

19

> [t]he administrative record contains considerable
> evidence of [ P]laintiff's repeated and consistent
> violation of the bookkeeping and other requirements
> imposed pursuant to the [GCA].  This evidence was
> uncontested by [ P]laintiff either in the proceedings
> before the [ATF] or in [his filings] submitted to th[is
> C]ourt.  There is simply no doubt that [ P]laintiff is
> chargeable with numerous violations [of the GCA].

Stein's, Inc. v. Blumenthal, 649 F.2d 463, 467 (7th Cir. 1980).

Fundamentally, the Court should observe that "[i]t is clear from

the record that ATF gave [P]laintiff every chance to bring [his]

operation into compliance with the [GCA] and that [P]laintiff

simply did not do so."  T.T. Salvage Auction Co. Inc. v. Sec'y,

U.S. Dep't of Treasury, 859 F. Supp. 977, 980 (E.D.N.C. 1994).

Additionally, in 2014, after his fourth compliance inspection,

Plaintiff vowed to the ATF that he would "complete[ Form 4473s] in

full before the firearm is allowed to leave the building[, and]

double check[ Form 4473s] to ensure all information is recorded and

transferred correctly."  (Docket Entry 12-1 at 130.)  Despite that

expression of intent, the 2021 compliance inspection revealed no

fewer than 85 deficiencies on Form 4473s.  (See id. at 103-108.)

Plaintiff seeks to style these violations as mere negligence (see

Docket Entry 21 at 16), but, "[a]t some point, repeated negligence

becomes recklessness, and that point arrived for [Plaintiff] in

20[21]," Armalite, Inc. v. Lambert, 544 F.3d 644, 650 (6th Cir.

2008).

To repeat, "a violation is willful if the licensee has been

informed of the regulations, warned of violations, and continually

20

violates those requirements." <u>Arwady Hand Trucks Sales, Inc. v.</u> <u>Vander Werf</u>, 507 F. Supp. 2d 754, 761 (S.D. Tex. 2007). Given that Plaintiff's "errors [not only] continue[d but] even increase[d] in the face of repeated warnings given by enforcement officials, . . . [the Court] may infer as a matter of law that [Plaintiff] simply d[id] not care about the legal requirements." <u>RSM</u>, 466 F.3d at 322. Plaintiff's violations thus reflect "deliberate disregard of[ and] plain indifference toward[ his obligations under the GCA]." <u>Id.</u> at 321-22.

Plaintiff also argues that his conduct never "jeopardized public safety" (Docket Entry 21 at 17), pointing to an ATF policy that advocates for FFL revocation in instances where the violations "could affect public safety" (<u>id.</u> at 3). This argument falls short because courts have repeatedly rejected the notion that recordkeeping violations of the GCA do not implicate public safety. <u>See</u> <u>RSM</u>, 466 F.3d at 323 (noting that Form 4473 "goes to the core of the [GCA]'s requirements"); <u>Shawano Gun & Loan, LLC v. Hughes</u>, No. 09-C-150, 2010 WL 3062847, at *6 (E.D. Wis. Aug. 2, 2010) (concluding that plaintiff's "no harm, no foul argument . . . misses the mark"), <u>aff'd</u>, 650 F.3d 1070 (7th Cir. 2011); <u>Willingham</u> <u>Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives</u>, 348 F. Supp. 2d 1299, 1309 n.14 (S.D. Ala. 2004) ("Where a dealer does not properly maintain ATF records to the agency's exact specifications, the ATF's ability to fulfill its legislative

mandate may be compromised."), aff'd, 415 F.3d 1274 (11th Cir. 2005). Ignoring this authority, Plaintiff seeks to minimize the severity of his conduct; however, "[t]his [C]ourt cannot countenance such a cavalier view of the mandates of the GCA." Best Loan Co. v. Herbert, 601 F. Supp. 2d 749, 755 (E.D. Va. 2009).

"Improper recordkeeping is a serious violation." Fin & Feather Sport Shop, Inc. v. United States Treasury Dep't, Internal Revenue Serv., Bureau of Alcohol, Tobacco & Firearms, 481 F. Supp. 800, 806 (D. Neb. 1979). In fact, when Congress passed the GCA, "it was concerned with the widespread traffic in firearms[, and] . . . determined that the ease with which firearms could be obtained contributed significantly to the prevalence of lawlessness and violent crime in the United States." Huddleston v. United States, 415 U.S. 814, 824 (1974). To address this concern, "Congress imposed strict recordkeeping requirements on federally licensed firearms dealers." Fin & Feather, 481 F. Supp. at 806. Plaintiff's argument that "technical" violations of the GCA do not implicate public safety therefore lacks both relevance and merit.[7]

---

7 Moreover, Plaintiff's own testimony in the revocation hearing undercuts his argument that his violations could not affect public safety. For example, Plaintiff failed, on five occasions, to properly record the firearm description on a Form 4473. (See Docket Entry 12-1 at 105.) Without that information, Plaintiff admitted that the ATF would face difficulty in tracing the firearm, had someone used it in commission of a crime. (See id. at 94-95.) And, as Plaintiff further testified, the ATF calls him to trace a firearm "weekly." (Id. at 94.) Plaintiff's violations, then, could have significant real-world consequences for public safety.

In the face of overwhelming evidence of violations, which Plaintiff does not dispute (see Docket Entry 21 at 2 (conceding that "there are no genuine issues of material fact")), Plaintiff maintains that his conduct could not rise to the level of willfulness because the violations represented only a small fraction of the total transactions Plaintiff conducted from his business (see id. at 16-17). However, as the Fourth Circuit has recognized:

> [p]lain indifference can be found even where nine times out of ten a licensee acts in accordance with the regulations, if he was plainly indifferent to the one-in-ten violation. [Plaintiff] received repeated warnings regarding [] precise type[s] of violation[s] from the ATF, and ATF officials even met with him twice to review the regulations and make sure that he understood what was required in order to be in compliance.

American Arms Int'l v. Herbert, 563 F.3d 78, 87 (4th Cir. 2009).

In short, the Court should reject Plaintiff's "attempt[s] to dismiss [his] violations as unintentional, unavoidable and de minimis," Stein's, 649 F.2d at 468. "A single willful violation authorizes the ATF to revoke the violator's FFL," Fairmont Cash, 858 F.3d at 362, and "the [GCA] does not allow any de minimis number of [willful] violations," Article II, 441 F.3d at 498. Accordingly, the Court should uphold Defendant's determination that Plaintiff willfully violated the GCA.

23

*Evidentiary Hearing*

Because the Court should conclude that Plaintiff's willful violations served as the basis for the revocation of Plaintiff's FFL, it should consequently find that Defendant "was [] authorized . . . to revoke [Plaintiff's FFL]." 18 U.S.C. § 923(f)(3). Plaintiff, however, contends that, even though "there are no genuine issues of material fact, . . . the matter should be set for an evidentiary hearing before th[is Court]." (Docket Entry 21 at 2.) The Court should decline this request.

Although the Court "is afforded discretion to receive evidence additional to that contained in the administrative record," Shawano Gun & Loan, LLC v. Hughes, 650 F.3d 1070, 1076 (7th Cir. 2011), it should only do so "when some good reason . . . either appears in the administrative record or is presented by the party petitioning for judicial review," Stein's, 649 F.2d at 466. No good reason to do so presents itself in this case, because (as another court concluded):

> [t]he administrative record in this case is robust, with some hundreds of pages of testimony and exhibits. [Plaintiff] did not object to any of the evidence presented at the hearing. By all accounts, the ATF representative who testified at the hearing recounted all of the evidence pertaining to the [] investigation. Moreover, the fact that [Plaintiff] does not dispute any of the violations found by the ATF makes unclear exactly what is sought. [Plaintiff] wants a full trial on the issue of willfulness alone, but [] in its brief . . . it was unable to point to a genre of relevant evidence it hopes to [present that would counter the evidence in the administrative record].

<u>Fairmont Cash</u>, 858 F.3d at 364.  Put another way, although "the [C]ourt may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing," 18 U.S.C. § 923(f)(3), Plaintiff here has failed to forecast any material evidence (<u>see generally</u> Docket Entry 21). That failure warrants a grant of summary judgment to Defendant, because here the administrative record provides more than sufficient evidence for the Court to conclude that Defendant "was [] authorized to . . . revoke [Plaintiff's FFL]." 18 U.S.C. § 923(f)(3).  As a result, the Court should decline to hold an evidentiary hearing, and should grant summary judgment to Defendant.

### III. CONCLUSION

The undisputed record establishes that Plaintiff willfully violated the GCA, meaning that Defendant possessed authority to revoke Plaintiff's FFL.  Defendant has therefore shown entitlement to judgment as a matter of law.

**IT IS THEREFORE RECOMMENDED** that the Summary Judgment Motion (Docket Entry 13) be granted.

This 7th day of August, 2023.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

25